IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
PENNSYLVANIA

| | | |
|---|---|---|
| ALIGNED MEDICAL GROUP, P.C., | ) | CIVIL DIVISION |
| | ) | |
| Plaintiff | ) | No. |
| v. | ) | |
| | ) | |
| PROGRESSIVE INS. CO., | ) | |
| | ) | |
| Defendant | ) | |

## **NOTICE OF REMOVAL**

NOW, comes the Defendant, Progressive Insurance Company ("Progressive"), by and through its attorneys, Burns White LLC, and files this Notice of Removal pursuant to 28 U.S.C. § 1441, *et seq.* Progressive submits that the United States District Court for the Eastern District of Pennsylvania has original diversity jurisdiction over this civil action and this matter may be removed to the District Court in accordance with the procedures provided at 28 U.S.C. § 1446. In further support of this Notice of Removal, Progressive states as follows:

1.      Plaintiff Aligned Medical Group, P.C. ("Aligned") initiated this action by filing a Complaint in the Court of Common Pleas of Chester County on or about March 27, 2018. A true and correct copy of the Complaint is attached as Exhibit "A."

2.      On April 16, 2018, Plaintiff filed an affidavit of service. Undersigned counsel is not in possession of the affidavit of service. A true and correct copy of the state court docket is attached hereto as Exhibit "B."

3.      Upon information and belief, the documents which are attached as Exhibits "A" and "B" constitute all of the pleadings, process, and orders which were filed in connection with the state court action.

4.     Plaintiff Aligned Medical Group, P.C. is a Pennsylvania corporation with its principal place of business in Paoli, Pennsylvania.

5.     Both at the time Plaintiff initiated this action and at the time of this Removal, Plaintiff was and is a citizen of Pennsylvania.

6.     "Progressive Insurance Company" is not a legal or corporate entity capable of being sued.

7.     Progressive Advanced Insurance Company issued the automobile insurance policy which is at issue in this matter.

8.     Progressive Advanced Insurance Company is not incorporated in Pennsylvania, nor does Progressive Advanced Insurance Company have its principal place of business in Pennsylvania.

9.     Rather, Progressive Advanced Insurance Company is an Ohio corporation with its principal place of business in Ohio with an address of 6300 Wilson Mills Road, Mayfield Village, Ohio 44143.

10.    Both at the time Plaintiff initiated this action and at the time of this Removal, Progressive Advanced Insurance Company is and was a citizen of Ohio.

11.    Plaintiff's Complaint consists of five counts: "Breach of Contract—Violation of Peer Review Process," Bad Faith, "Violation of 75 Pa. C.S.A. § 1797(b)," "Attorney's Fees and Costs," and "Treble Damages." See Exhibit "A."

12.    Plaintiff seeks payment of medical benefits under an insurance policy that provides a total of $50,000 in medical benefits.

13.     Plaintiff also alleges that Progressive violated Pennsylvania's bad faith statute, 42 Pa. C.S.A. § 8371 and seeks punitive damages, interest on the medical benefits claim, and attorney's fees.

14.     Punitive damages are properly considered in determining the amount in controversy for the purpose of determining whether the jurisdictional amount has been satisfied. See Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1993).

15.     Eastern District courts have held that removal is proper where punitive damages based upon a multiplier of up to four times the alleged compensatory damages are sufficient to meet the amount in controversy.  See Hatchigan v. State Farm Ins. Co., 2013 WL 3479436 (E.D. Pa. July 11, 2013); Harvey v. United States Life Ins. Co., 2008 WL 2805608 (E.D. Pa. 2008).

16.     Additionally, Plaintiff seeks attorney's fees and treble damages under 75 Pa. C.S.A. § 1797.

17.     While Plaintiff apparently seeks to avoid removal by alleging in the *ad damnum* clauses that it seeks "in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-Four Thousand, Nine Hundred and Ninety-Nine Dollars ($74,999.00)," *ad damnum* clauses are not conclusive and do not limit the amount recoverable in state court.  See, e.g. Wilson v. Walker, 790 F. Supp. 2d 406, 508-09 (E.D. Pa. 2011) (citing Morgan v. Gay, 471 F.3d 469, 474-75 (3d Cir. 2006) (noting that court "must look to see if the plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not").

18.     As Plaintiff alleges that it is entitled to the payment of medical benefits under a policy that provides $50,000 in medical benefits, as well as punitive damages, treble damages,

interest, and attorney's fees, the amount in controversy exceeds the jurisdictional requirement of $75,000.

19.     Because Plaintiff and Progressive are citizens of different states, and because the amount in controversy exceeds $75,000, the United States District Court for the Eastern District of Pennsylvania has original jurisdiction over this matter.  See 28 U.S.C. § 1332.

20.     Section 1332 confers original jurisdiction over all civil matters where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

21.     Progressive submits that this matter may be removed to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1441, which permits removal of any civil action to the district courts that have original jurisdiction.

WHEREFORE, Defendant, Progressive Insurance Company, removes this civil action to the United States District Court for the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1441.

Respectfully submitted,

BURNS WHITE LLC

By:   _David Twilla_
Daniel J. Twilla (PA I.D. 93797)
E-mail: djtwilla@burnswhite.com
Kathleen P. Dapper (PA I.D. 315993)
E-mail:  kpdapper@burnswhite.com
Burns White Center
48 26th Street
Pittsburgh, PA  15222
(412) 995-3286 – Direct
(412) 995-3300 – Fax
*Attorneys for Defendant*

# EXHIBIT "A"

ECKELL, SPARKS, LEVY, AUERBACH, MONTE,
SLOANE, MATTHEWS & AUSLANDER, P.C.
Matthew J. Bilker, Esquire
I.D. No. 311284
300 W. State Street, Ste. 300
P.O. Box 319
Media, PA 19063
(610) 565-3700

Filed and Attested by
PROTHONOTARY
27 Mar 2018 02:14 PM

ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| ALIGNED MEDICAL GROUP, P.C | COURT OF COMMON PLEAS |
| 4 Industrial Blvd, Suite 200 | OF CHESTER COUNTY |
| Paoli, PA 19301 | |
| Plaintiff | |
| v. | CIVIL ACTION - LAW |
| PROGRESSIVE INS. CO | |
| P.O. Box 512926 | |
| Los Angeles, CA 90051 | DEMAND FOR JURY TRIAL |
| Defendant | |

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

*Lawyers' Referral Service*
*Delaware County Bar Association*
*Front and Lemon Streets*
*Media, PA 19063*
*(610) 566-6627*

[621772/1]                    2018-03297-CT



Filed and Attested by
PROTHONOTARY
27 Mar 2018 02:14 PM
B. JEWELL

**ECKELL, SPARKS, LEVY, AUERBACH, MONTE,
SLOANE, MATTHEWS & AUSLANDER, P.C.**
Matthew J. Bilker, Esquire
I.D. No. 311284
300 W. State Street, Ste. 300
P.O. Box 319
Media, PA 19063
(610) 565-3700

ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| **ALIGNED MEDICAL GROUP, P.C** | COURT OF COMMON PLEAS |
| 4 Industrial Blvd, Suite 200 | OF CHESTER COUNTY |
| Paoli, PA 19301 | |
|               Plaintiff | |
|     v. | CIVIL ACTION - LAW |
| **PROGRESSIVE INS. CO** | |
| P.O. Box 512926 | |
| Los Angeles, CA 90051 | DEMAND FOR JURY TRIAL |
|          Defendant | |

<u>**COMPLAINT**</u>

Plaintiff, Aligned Medical Group, P.C., by and through its attorney, Matthew J. Bilker,

Esquire, of Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C. does

hereby present this civil action complaint, and in support thereof, avers as follows:

1. Plaintiff, Aligned Medical Group, P.C. (hereinafter referred to as "Aligned"), is a

corporation with its principal place of business located at 4 Industrial Blvd, Suite 200, Paoli, PA

19301.

2. The Defendant, Progressive Insurance Company (hereinafter referred to as

"Progressive") is an insurance company licensed to transact business in the Commonwealth of

Pennsylvania with offices situated, *inter alia*, at 780 E. Market Street, West Chester, PA 19382.

3. At all times relevant hereto, Defendant, Progressive, acted and/or failed to act by

and through its duly authorized officers, representatives, principals, employees, agents, workmen

and/or servants.

[621772/1]

*2018-03297-CT*

2

COUNT I
### BREACH OF CONTRACT – VIOLATION OF PEER REVIEW PROCESS

4.      On or about August 14, 2015, Sarrah Deets, was involved in a motor vehicle accident in which she sustained personal injuries.

5.      Defendant, Progressive, had previously issued a policy of automobile insurance to Sarah Deets, which Policy Number 27728945 was in effect on August 14, 2015. *A true and correct copy of the Declaration Page for policy number 27728945 is attached hereto as Exhibit "A".*

6.      Pursuant to the terms and conditions of the aforesaid policy, Sarah Deets was a named insured and/or insured.  Said policy provided for $50,000.00 in first party medical benefits in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, *et seq.*, as amended (hereinafter "MVFRL").

7.      As a result of the accident, Sarrah Deets, sustained serious personal injuries which were caused by the collision, including, but not limited to, head, cervical, thoracic, lumbar and left knee injuries.

8.      As a result of the aforementioned accident, Sarrah Deets, has been obligated to receive and undergo medical attention and care for which she has been obligated to expend various sums of money or to incur various expenses that would otherwise be paid as medical benefits.

9.      Following the accident, Sarrah M. Deets incurred reasonable and necessary medical treatment from physicians, chiropractors and/or other medical providers at Plaintiff, Aligned, including Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C., and Amanda Wright, LMT.  The aforesaid treatment included therapy, trigger point

[621772/1]                    3
                        *2018-03297-CT*

Received Date: 04/02/2018

injections and chiropractic treatment.

10.     In fact, Sarrah Deets had a number of trigger point injections performed on her as well to help alleviate and/or otherwise manage the pain.

11.     As a result of the treatment following the August 14, 2015 motor vehicle accident, Sarrah Deets, incurred reasonable and necessary medical bills in excess of $20,098.00 to be paid at Act 6 rates.

12.     At various times, Plaintiff, Aligned, has requested Defendant to pay the aforementioned medical bills as they have accumulated during the period commencing August 14, 2015 through the present.

13.     It is believed, and therefore averred, that Defendant, Progressive, regularly paid almost all of the aforementioned bills, including those generated as a result of the treatment resulting from August 14, 2015 accident.

14.     It is believed and therefore averred, that the Sarrah Deets continued to expend various sums of money for an indefinite period of time after November 25, 2015 for the necessary medical care and treatment for her injuries suffered as a result of the August 14, 2015 accident.

15.     After months of medical treatment was rendered (following the subject motor vehicle accident), Defendant, Progressive, decided to obtain an alleged "Peer Review," of the medical treatment provided to Sarrah Deets by Plaintiff, Aligned. A peer review is supposed to determine if the treatment is medically reasonable and necessary.[1]  However, a peer review

---

[1] A "peer review" is a procedure, created by § 1797 of the MVFRL, by which an insurance company may submit its' own insured's treatment to a "peer review organization" to review the reasonableness of the insured's treatment relative to his or her injuries.  More than 81% of "peer reviews" conducted in 2015 resulted in a partial or total benefit termination.

[621772/1]                         2018-03297-CT

cannot challenge causation. *See,* Aicher v. Erie Indemnity Co., 83 Erie Co. L.J. 1 (1999) (medically necessary is not the same as causation; the legislature had the opportunity to add causation to §1797 but did not do so). *See also,* (Levine v. Travelers Prop. Cas. Ins. Co., 9 A.3d 671 (Pa. Super. 2013)("An IME is not peer review as defined in §1797 of the MVFRL. The purpose of peer review is to determine whether medical care and bills are reasonable and necessary based upon a records review. An IME...is [used] to determine whether the injuries are causally related to the accident...[i]t is an entirely different process [than peer review] pursued for a different purpose."

16.     On or about February 22, 2016, Defendant, Progressive, allegedly wrote a letter to ExamWorks, a Peer Review Organization (hereinafter referred to as "PRO") to request a "Peer Review" be performed.  However, as will be made clear below, they ultimately provided an improper Peer Review.

17.     In that regard, Progressive apparently contracted with ExamWorks. On April 21, 2016, Dr. Michael Ziev, D.O., allegedly conducted a "peer review" of the medical treatment provided to Sarrah Deets by Plaintiff. He reviewed records from Aligned and additional diagnostic studies and drafted a report, determining that the trigger point injections performed were not medically necessary or appropriate, nor was any treatment necessary and appropriate after November 25, 2015. *A true and correct copy of Dr. Ziev's peer review report is attached hereto as Exhibit "B."*

18.     It is believed, and therefore averred, that, in 2016, ExamWorks performed 131 initial peer review determinations.  Of those initial determinations, ExamWorks found treatment appropriate and made full payment in only 33, or 25.1% of those cases. Moreover, partial or full payment denial was made in 98, 74.8% of those claims submitted to it.

19.     Plaintiff believes, and therefore avers, that the statistics reveal that Defendant, Progressive, has violated §1797(b) of the MVFRL, in that Defendant, Progressive, has an express and/or implied plan to intentionally cut off benefits in violation of its responsibility under the terms and conditions of its contract with its insured.  In 2016, of the 392 claims that Progressive had submitted for peer review (104 of which were submitted to ExamWorks), treatment was found appropriate in 94, or 23.9% of those claims.  It is absurd and unreasonable to believe that 76.1% of all treatment provided by Pennsylvania health care providers after automobile accidents is either partially or completely unreasonable.  Henceforth, it is believed, and therefore averred, that Defendant, Progressive, is intentionally acting contrary to the purpose and intent of the peer review provisions of Act 6, to improperly deny medical bills.

20.     Defendant's misuse of entire peer review process was an intentional attempt by Defendant Progressive to improperly "cut off" Sarrah Deets' medical benefits, which Ms. Deets had purchased and paid a significant premium in order to purchase substantially more than the minimum benefits required under the MVFRL, i.e. $5,000.00.  Specifically, Plaintiff purchased $50,000.00 in PIP benefits as opposed to the $5,000.00 statutory minimum.  *See, 75 Pa.C.S.A. §1711.*

21.     Defendant, Progressive, is contractually obligated to provide the Sarrah Deets, with $50,000.00 in first party medical benefits relating to the injuries she suffered as a result of the August 14, 2015 motor vehicle accident.

22.     On or about April 26, 2016, however, Defendant Progressive wrote to the Plaintiff and indicated that as a result of the Peer Review conducted by Dr. Ziev, Defendant, Progressive, was denying payment on all treatment following November 25, 2015 and further requested repayment in the amount of $2,923.49 for treatment paid that Dr. Ziev found to be

[621772/1]                          *2018-03297-CT*

"unreasonable." *A true and correct copy of Defendant, Progressive's, April 26, 2016 letter is attached hereto as Exhibit "C."*

23.   Defendant, Progressive, allegedly pursuant to 75 Pa.C.S.A. § 1797(b) of the Pennsylvania MVFRL, as amended, contracted with a Peer Review Organization, ExamWorks, to perform a Peer Review, which statute allows for review to confirm that medical treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary in light of Ms. Deets' injuries.

24.   It is believed and therefore averred that all said medical bills were fair and reasonable and that said treatment was medically necessary and, in fact, was caused by the August 14, 2015 motor vehicle accident.

25.   Moreover, due to the fact that Defendant, Progressive, failed to perform a proper Peer Review as required by §§1796-1798 of the MVFRL, and in accordance with the regulations set forth above, it is believed and therefore averred that Defendant, Progressive's, conduct constituted a wanton and blatant disregard of the entire Peer Review process, and, therefore, *Defendant is subject to treble damages pursuant to § 1797(b)(4) of the MVFRL.*

**WHEREFORE**, Plaintiff demands judgment against the Defendant for a sum in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-four Thousand, Nine Hundred and Ninety Nine Dollars ($74,999.00),  in the aggregate with all other counts herein, which includes the full amount of all outstanding medical bills due (reduced by Act 6), plus 12% interest accrued on said overdue benefits, plus reasonable attorney's fees, costs of suit, treble damages and specific performance of the first-party provisions of Plaintiff's insurance policy, *inter alia*, that Defendant, Progressive, be required to pay for all reasonable and necessary present and future medical treatment required for and/or prescribed to Sarrah Deets by Plaintiff, for treatment of the injuries

[621772/1]                    *2018-0329̄7-CT*

that she suffered as a result of the August 14, 2015 motor vehicle accident.

## COUNT II
### Bad Faith, 42 P.S. § 8371

41.     Plaintiff incorporates herein by reference the allegations contained in paragraph one (1) through forty (40) as though fully set forth at length herein.

42.     42 P.S. § 8371, provides a private cause of action for bad faith against insurance companies as follows:

> "In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
>
> (2) Award punitive damages against the insurer;
>
> (3) Assess court costs and attorney fees against the insurer."

43.     Plaintiff is entitled to raise simultaneous claims for bad faith, arising under both, 42 P.S. §8371, as well as claims under § 1797 of the MVFRL, within a single civil action. *See, e.g.,* Veltri v. Travelers Commercial Ins. Co., C.P. Lackawanna, Sept. 2009.  See also, Hickey v. Allstate, 2010 WL 2606646 (M.D. Pa. June 25, 2010).[2]

44.     In the insurance context, "bad faith" is defined as "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e. good faith and fair dealing), through

---

[2] Bad faith claims are not preempted by §1797 when, in addition to a claim that the medical treatment was reasonable and necessary, the insured also alleges an abuse of the peer review process. Hickey v. Allstate Prop & Cas. Ins. Co., 722 F.Supp. 2d 609 (M.D. Pa. 2010).

Received Date: 04/02/2018

some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith."

Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)

45.     To illustrate bad faith, an insured most prove that (1) the insurer did not have a reasonable basis for denying benefits under the policy; and (2) that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim. Id.

46.     Defendant, Progressive, acted in bad faith in denying the first party benefits it was contractually obligated to provide to Sarrah Deets.

47.     §1797(b)(1) of the MVFRL, as amended, provides that insurers shall contract with a peer review organization only for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person.  The evaluation is limited to confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary.

48.     Defendant, Progressive, is on statutory notice of the above limitations on the authority of PRO's.

49.     In the instant case, Defendant has intentionally and/or recklessly failed and refused to pay benefits towards Sarrah Deets, outstanding medical charges based upon the alleged basis that, certain treatment was not medically necessary or appropriate.

50.     It is further believed and therefore averred that the Defendant had no reasonable basis to believe that Ms. Deets' treatments were not medically necessary, but, instead was intentionally trying to simply "cut off" medical coverage for which Ms. Deets' paid a significant premium.  It is believed and therefore averred that Defendant had and has a practice of attempting to "cut off" medical treatment without reasonable cause to do so.  Alternatively, Defendant intentionally did so in this case.

[621772/1]                          9
                              2018-03297-CT

51.     It is further believed and therefore averred that the Defendant, Progressive, has, or may have, employed ExamWorks in bad faith in that said Peer Review Organization does a *substantial amount of Peer Review work for Defendant and, therefore, has a financial interest in* providing to Defendant a biased Peer Review report.

        a.     In 2016, ExamWorks performed 131 initial peer review determinations. Of those initial determinations, ExamWorks found treatment appropriate and made full payment in only 33, or 25.1%, of those cases.

        b.     Moreover, in 2016, of the astounding 392 claims that Progressive had submitted for peer review (over 100 of which were submitted to ExamWorks), treatment was found appropriate in only 94, or 23.9% of those claims.

52.     Defendant, Progressive, has undertaken a course of action which has been designed to unilaterally, and without justification, refuse claims for medical benefits and cause Ms. Deets to become personally responsible for medical bills arising out of the maintenance and use of a motor vehicle, in contradiction to the terms of her insurance contract.

53.     Defendant, Progressive, has intentionally and/or recklessly abused its ability to conduct a Peer Review of its insured, as the Defendant and/or Defendant's agents, intentionally ignored uncontroverted evidence that Sarah Deets had sustained multiple injuries as a result of the August 14, 2015 accident.

54.     Defendant, Progressive, wrongfully denied benefits to Plaintiff, Aligned, based upon the results of a Peer Review, which was conducted in bad faith, and which Peer Review process was violated by not following the statutory guidelines set forth in the FRMVL.

55.     Defendant, Progressive, committed other acts of bad faith in violation of § 8371 including, but not limited to, Defendant's frivolous or unfounded refusal to pay Plaintiff for

Received Date: 04/02/2018

medical treatment provided to Ms. Deets, conduct that imports a dishonest purpose, and/or conduct motivated by self-interest or ill will.

WHEREFORE, Plaintiff demands judgment against the Defendant for a sum in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-Four Thousand, Nine Hundred and Ninety-Nine Dollars ($74,999.00), in the aggregate with all other counts herein, representing interest, punitive damages, court costs and attorney's fees.

### COUNT III
### Violation of 75 Pa.C.S.A. § 1797(b)

56.     Plaintiff incorporates herein by reference the allegations contained in paragraphs one (1) through fifty-five (55) as though fully set forth at length herein.

57.     75 Pa.C.S.A. §1797(b), provides an insured with a private cause of action for an insurer's denial of benefits based upon a determination of whether or not the treatment at issue is reasonable and/or necessary.

58.     Plaintiff believes and therefore avers that the Defendant had no reason whatsoever to believe that Sarah Deets' treatments were not medically necessary, but, instead was intentionally trying to simply "cut off" medical coverage for which Ms. Deets had paid a significant premium.  It is believed and therefore averred that Defendant had and has a practice of attempting to "cut off" medical treatment by Peer Review without reasonable cause to do so. Alternatively, Defendant intentionally did so in this case.

59.     It is believed, and therefore averred, that ExamWorks has continuously been providing negative Peer Review reports to Defendant and other insurance companies which serve said insurance companies as a basis for denying benefits, for the purpose of maintaining a steady source of business, thereby showing a pattern of abuse of the Peer Review process.

Received Date: 04/02/2018

60.    Moreover, Defendant, Progressive, intentionally and/or recklessly abused the Peer Review process, as the Defendant intentionally and blatantly disregarded the regulations which govern the Peer Review process as set forth by the Insurance Commissioner at 31 Pa. Code § 69.52.

WHEREFORE, Plaintiff demands judgment against the Defendant for a sum in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-Four Thousand, Nine Hundred and Ninety-Nine Dollars ($74,999.00), in the aggregate with all other counts herein, representing payment of the full amount of all outstanding medical bills due (reduced by Act 6), plus 12% interest accrued on said overdue benefits, plus reasonable attorney's fees, costs of suit, and specific performance of the first-party provisions of Plaintiff's insurance policy, *inter alia*, that Defendant, Progressive, be required to pay for all reasonable and necessary present and future medical treatment required for and/or prescribed to Sarah Deets from Plaintiff for treatment of the injuries that she suffered as a result of the August 14, 2015, motor vehicle accident.

## COUNT IV
### Attorney's Fees and Costs

61.    Plaintiff incorporates herein by reference the allegations contained in paragraphs one (1) through sixty (60) as though fully set forth at length herein.

62.    75 Pa.C.S.A. §1716, provides as follows:

> "In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." (emphasis added).

63.    Plaintiff believes and therefore avers, that Defendant, Progressive, acted in an unreasonable manner with respect to its denial of first-party medical benefits to the Ms. Deets, and, as a result, the Defendant must pay to Plaintiff a reasonable attorney's fee pursuant to 75 Pa.C.S.A. §1716.

[621772/1]                              12
                            *2018-03297-CT*

64.     Moreover, 75 Pa.C.S.A. §1797(b), provides that upon a court determination that the medical treatment and services rendered to an insured were reasonable and/or necessary: "the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." (emphasis added).

65.     Plaintiff believes and therefore avers, that all of the medical treatment rendered to Ms. Deets was medically necessary and/or reasonable, and, as a result, the Defendant must pay to Plaintiff the costs of this challenge and all attorney's fees incurred therefrom, pursuant to 75 Pa.C.S.A. §1797(b).

66.     Furthermore, 75 Pa.C.S.A. §1798(b), provides as follows:

> "In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." (emphasis added).

67.     Plaintiff believes and therefore avers, that Defendant, Progressive, lacked a reasonable foundation to refuse to pay medical benefits to Plaintiff for treatment provided to Ms. Deets to which she was clearly entitled under Policy Number 27728945 and for which she has paid significant premiums.

68.     Therefore, pursuant to 75 Pa.C.S.A. §1798(b), Defendant, Progressive, must pay a reasonable attorney's fee to Plaintiff.

WHEREFORE, Plaintiff demands judgment against the Defendant for a sum in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-Four Thousand, Nine Hundred and Ninety-Nine Dollars ($74,999.00), in the aggregate with all other counts herein, representing payment of the full amount of all outstanding medical bills due (reduced by Act 6), plus 12% interest accrued on said overdue benefits, plus reasonable attorney's fees, costs of suit, and specific

Received Date: 04/02/2018

performance of the first-party provisions of Plaintiff's insurance policy, *inter alia*, that Defendant, Progressive, be required to pay for all reasonable and necessary present and future medical treatment required for and/or prescribed to Sarrah Deets from Plaintiff for treatment of the injuries that she suffered as a result of the August 14, 2015, motor vehicle accident.

COUNT V
Treble Damages

69.     Plaintiff incorporates herein by reference the allegations contained in paragraphs one (1) through sixty-eight (68) as though fully set forth at length herein.

70.     Where an insurer's conduct in improperly utilizing the peer review process is considered "wanton," the insurer shall be subject to pay treble damages to the injured party/insured.

71.     Due to the fact that Defendant, Progressive, failed to perform a proper Peer Review as required by §§1796-1798 of the MVFRL, and in accordance with the regulations set forth above, it is believed and therefore averred that Defendant, Progressive's, conduct constituted a wanton and blatant disregard of the entire Peer Review process, and, therefore, *Defendant is subject to treble damages pursuant to § 1797(b)(4) of the MVFRL.*

WHEREFORE, Plaintiff demands judgment against the Defendant for a sum in excess of Fifty Thousand Dollars ($50,000.00) but not in excess of Seventy-Four Thousand, Nine Hundred and Ninety-Nine Dollars ($74,999.00), in the aggregate with all other counts herein, treble damages for the violation of §§1796-1798.

ECKELL, SPARKS, LEVY, AUERBACH, MONTE, SLOANE, MATTHEWS & AUSLANDER, P.C.

BY: _Matthew Bilker_

Matthew J. Bilker, Esquire
Attorney for Plaintiff

[621772/1]                    14
                         2018-03297-CT

# EXHIBIT A

*2018-03297-CT*

PROGRESSIVE
P.O. BOX 31260
TAMPA, FL 33631

**PROGRESSIVE**
DIRECT Auto

Policy Number: **27728945**
Underwritten by:
Progressive Advanced Insurance Co
February 24, 2017
Policy Period:  Mar 30, 2017 - Sep 30, 2017
Page 1 of  3

SARRAH DEETS
733 SURREY RD
ALDAN, PA 19018

**progressive.com**
**Online Service**
Make payments, check billing activity, update
policy information or check status of a claim.

**1-800-776-4737**
For customer service and claims service,
24 hours a day, 7 days a week.

# Auto Insurance
# Coverage Summary
## This is your Renewal
## Declarations Page

The coverages, limits and policy period shown apply only if you pay for this policy to renew.

Your coverage begins on March 30, 2017 at 12:01 a.m.  This policy expires on September 30, 2017 at 12:01 a.m.

Your insurance policy and any policy endorsements contain a full explanation of your coverage.  The policy contract is
form 9611D PA (02/16).  The contract is modified by forms Z357 (01/07) and 4884 (10/08).

## COLLISION COVERAGE FOR RENTAL VEHICLES
IF THIS POLICY PROVIDES COLLISION COVERAGE, IT WILL APPLY TO VEHICLES YOU RENT, BUT NOT TO
VEHICLES RENTED FOR 6 MONTHS OR MORE.

## FRAUD NOTICE
Any person who knowingly and with intent to defraud any insurance company or other person files an application for
insurance or statement of claim containing any materially false information or conceals for the purpose of misleading,
information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such
person to criminal and civil penalties.

## Underwriting Company
Progressive Advanced Insurance Co
P.O. Box 31260
Tampa , FL 33631
1-800-776-4737

## Drivers and resident relatives

| | Additional Information |
|---|---|
| Sarrah Deets | First Named Insured |

Form 6489 PA (02/15)

*2018-03297-CT*


Continued

Policy Number: 27728945
*Sarah Deets*
Page2  of 3

## Outline of coverage

**2015 NISSAN SENTRA 4 DOOR SEDAN**
VIN: 3N1AB7AP6FY26036
Garaging ZIP Code: 19018
Primary use of the vehicle:  Commute
This vehicle is currently enrolled in the Snapshot $^{SM}$ Program.

|  | Limits | Deductible | Premium |
|---|---|---|---|
| Liability To Others |  |  | $279 |
|   Bodily Injury Liability | $100,000 each person/$300,000 each accident |  |  |
|   Property Damage Liability | $50,000 each accident |  |  |
| First Party Benefits |  |  | 69 |
|   Medical Expenses | $50,000 each person |  |  |
|   Funeral Benefit | $2,500 each person |  | 5 |
|   Accidental Death | $5,000 |  | 5 |
| Uninsured Motorist - Nonstacked | $15,000 each person/$30,000 each accident |  | 16 |
| Underinsured Motorist - Nonstacked | $15,000 each person/$30,000 each accident |  | 22 |
| Comprehensive | Actual Cash Value | $500 | 22 |
| Collision | Actual Cash Value | $500 | 194 |
| Rental Reimbursement | up to $30 each day/maximum 30 days |  | 14 |
| Roadside Assistance |  |  | 5 |
| **Total 6 month policy premium** |  |  | **$631.00** |

## Premium discounts

| Policy | |
|---|---|
| 27728945 | Five-Year Accident Free, Five-Year Claim Free, Electronic Funds Transfer (EFT), Home Owner, Online Quote, Continuous Insurance: Diamond, Paperless and Three-Year Safe Driving |

| Vehicle | |
|---|---|
| 2015 NISSAN SENTRA | Driver and Passenger-side Airbag, Anti-Theft Device and Snapshot Driving |

## Lienholder information

| Vehicle | Lienholder |
|---|---|
| 2015 NISSAN SENTRA 3N1AB7AP6FY26036 | NISSAN MOTOR ACCPT DALLAS, TX 75266 |

## Tort Option

This policy provides full tort insurance.

## Notice of Available Premium Discounts

You may be eligible for discounts mandated by Act 6 of 1990:
- on first party benefits coverage if your car is equipped with a passive restraint system
- *on comprehensive coverage if your car is equipped with a passive anti-theft device*
- if all named insureds are 55 or older and have successfully completed a motor vehicle driver improvement course approved by PennDOT.

If you have any questions about your eligibility, please call Customer Service.

Form 6469 PA (02/15)          *2018-03297-CT*           Continued

Policy Number: 27728945
Sarrah Deets
Page 3  of 3

**Company officers**

President

Secretary

Received Date: 04/02/2018

# EXHIBIT B

*2018-03297-CT*

Michael Ziev D.O.
1800 Fox Chase Road
Philadelphia, PA 19152

April 21, 2016

ExamWorks
150 Presidential Way, Su 120
Woburn, MA 01801
781.396.6288
781.396.5592 fax

RE:         Sarrah Deets
EW file #   5451717
Claim #     155438687
DOA:        8/14/2015
DOB:        1/17/1985
Provider:   Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C.,
            Amanda Wright, LMT

Dear Sir:

I have been asked to perform an Act 6 peer review on Sarrah Deets who was reportedly injured in an accident on 8/14/15. Specifically, I have been asked to comment upon the treatment rendered by Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C., Amanda Wright, LMT. Specifically, I have been asked about the diagnosis, and treatment rendered with respect to reasonableness, medical necessity, and appropriateness.

Medical Records Reviewed

1- Request for review
2- Progress notes – Aligned Medical Group, P.C. – 8/25/15 – 11/16/15 – 22 visits with trigger point injections – all performed by physician assistants not countersigned by a physician.
3- 1/8/16 – Office visit – signed by Sheldon Lebovitz, D.O.
4- Progress notes – 1/25/16 – 3/4/16 – 11 office visits with trigger point injections all signed by physician assistants with no countersignature
5- Progress note – Michelle T. Ballentyne-Hyatt, MD – 2/22/16
6- Diagnostic ROM testing – 2/22/16
7- Invoices for services – Medical and injections -Aligned Medical Group
8- Chiropractic notes – 8/17/15 – 3/4/16- Nirav Patel, D.C. and Sarah Cole, D.C.
9- Chiropractic invoices – Aligned Medical Group
10- Massage therapy notes – Anessa Graham, LMT – 11/2/15 – 3/1/16 – 16 massage sessions
11- Progress notes – Michelle Balentyne-Hyatt, MD – 1/19/16 – visit with trigger point injections
12- 9/15/15 – MRI cervical spine and lumbar spine
13- EMG/NCV – 10/27/15 –neck
14- Another EMG/NCV – 11/16/15 – lumbar spine

Received Date: 04/26/2016

*2018-03297-CT*

RE:         Sarrah Deets
EW file #   5451717
Claim #     155438687
DOA:        8/14/2015
DOB:        1/17/1985
Provider:   Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C.,
            Amanda Wright, LMT

   15- Patient First Records – 8/29/15
   16- Emergency room records – Delaware County Medical Center – 8/29/2015
   17- Application for Benefits form – 9/14/2015

<u>History</u>

According to the submitted medical documentation the patient was injured in an accident on 8/14/2015 when she was the restrained driver of a car who swerved into the left passing lane to avoid another car that had cut her off from the right lane. The patient swerved to the left and then right and finally impacted a telephone pole. There was no pain initially but the patient stated that the pain began about 2 hours later. The patient did not seek treatment at the urgent care center until 8/29/15 and the patient was seen in the emergency room on 8/29/15 which was more than two weeks after the accident. The patient was x-rayed and evaluated at the emergency room and a diagnosis of post-traumatic myalgia (muscle aches) was documented.

The first documented visit to Aligned Medical Group was on 8/25/15 which was four days before the emergency room visit. The patient was complaining of tightness on the left side of her neck radiating into the skull causing headaches. She also was complaining of mid and low back pain radiating into her left thigh when seated. She complained of left knee pain above the knee cap. At this point trigger point injections were started consisting of Sarapin and lidocaine with a total of 8 injections planned from the get-go. The patient was to start exercises and chiropractic treatments The initial diagnoses were documented as cervicalgia, headache, thoricalgia, lumbalgia, cervical strain and sprain, spasm of the muscles and myalgia and myositis. All of these were signed and ordered by Megan Haines, PA-C, a physician assistant. Treatments and injections continued to be performed and ordered by physician assistants without physician countersignature until 1/8/2016 when the first documented visit by a physician, Sheldon Lebovitz, D.O. was documented. The therapy and injection visits were delivered for a total of 22 times until the physician saw the patient for the first and only time. Another 11 therapy and injection visits followed again delivered by a physician assistant without physician countersignature or any indication that a physician had seen the patient until 3/4/16, the last documented therapy visit. The only exception to this was a visit to Michelle Ballentyne-Hyatt, MD on 2/22/16 for testing.

The patient was also seen from 8/17/15 – 3/4/16 by Nirav Patel, D.C. and Sarah Cole, D.C. who delivered chiropractic treatment and therapy. In addition, the patient was seen by a massage therapist from 11/2/15 – 3/1/16 and received 16 massage sessions.

<u>Contact with provider under review</u>

It is noted that the providers under review did request a phone call to discuss the case. I discussed the case in a conference call with all of the requested providers including Daniel Scott, PA-C, Nirav Patel, D.C and Sarah Cole, D.C., and Amanda Wright LMT on 4/5/2016 at 12:10 P.M. I was also told that Sheldon Lebovitz, D.O. was no longer with the practice.

Received Date: 04/26/2016

*2018-03297-CT*

RE:        Sarrah Deets
EW file #   5451717
Claim #    155438687
DOA:       8/14/2015
DOB:       1/17/1985
Provider:  Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C.,
           Amanda Wright, LMT

## Discussion

There is really no documentation of severe injury in this case. If this patient had been severely injured one
might expect consultation with orthopedics to have been ordered and performed. All of the patient's
complaints are subjective with very little in the way of objective findings in this case. There was no
documentation in the notes about improvement. The pain at the end of treatment was essentially the same as
at the first visit. The documented diagnoses seem to be of myalgia (muscle pain), low back pain, headaches,
and neck pain. The diagnostic studies including the MRI examinations and the EMG/NCV studies were
essentially normal with no signs of significant injuries.

It is my considered medical opinion that standard practice guideline should be sufficient in this case. The
normal length of formal therapy for a patient with these types of injuries is from 4-12 weeks of passive therapy
modalities followed by one month of muscle strengthening and exercise. In this case I believe that 8-weeks of
passive therapy followed by one month of muscle strengthening and exercise should have been sufficient.
This means that by 10/25/15 the patient should have completed the 8 weeks of passive therapy modalities and
by 11/25/15 should have completed the one month of muscle strengthening and exercises. This is the date at
which time the treatment became medically unnecessary in my opinion. All therapy including chiropractic
care and massage therapy, visits, and medication after that date would not be considered medically necessary
or appropriate again in my opinion in this case. Again, if this patient had been severely injured orthopedic
consultation would have been ordered and performed. In addition, the diagnostic studies do not support the
medical necessity for additional treatment beyond 11/25/15.

Specifically addressing the trigger point injections, it would appear that the mainstay of treatment for this
patient whose main complaints are muscular in nature, appears to be trigger point injections. There really
was no documentation of any medication being utilized or at least none documented. In addition, the
trigger point injections were performed by physician assistants not under the oversight or at least not
countersigned by a physician. In any event, trigger point injections and certainly with the frequency
utilized, is not the standard of care in this or any medical community. The Sarapin portion of the injection
is also not really accepted as the standard of care.

There is a lack of firm evidence for the use of trigger point injections. A randomized study of trigger point
injection in patients with low back pain found that outcomes were equivalent for patients who were
injected with local anesthetic or with saline, or who were needled without injection, or sprayed with a
vapo-coolant, suggesting that any type of counter stimulation had some effect. Sarapin has been reported
as an agent to provide pain relief without motor weakness with an excellent risk/ benefit ratio in neural
blockade. Sarapin is a suspension of powdered Sarracenia purpurin (pitcher plant) in alkaline solution.
Researchers theorize that the distillate contained an unidentified biological substance that potentiates the
action of the ammonium ion. Modest but significant benefits were demonstrated with diagnostic blocks.
with diagnostic lumbar medial branch blocks. therapeutic lumbar medial branch blocks, and caudal
epidural injections. In an experimental study in the horse, no benefits were seen by injection of Sarapin.
The authors proposed that there may not be any benefits in other species as well. Multiple therapeutic

Received Date: 04/26/2016

*2018-03297-CT*

RE:         Sarrah Deets
EW file #   5451717
Claim #     155438687
DOA:        8/14/2015
DOB:        1/17/1985
Provider:   Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C.,
            Amanda Wright, LMT

agents utilized in neural blockade, including local anesthetics, steroids, and neurolytic agents, have been evaluated extensively. Sarapin has not been evaluated in controlled trials.

The trigger point injections, in my medical opinion, are not medically necessary or appropriate in this case.

The treatment is medically necessary and appropriate until 11/25/2015. Maximum benefit of treatment was reached on 11/25/2015.

The diagnoses were correct but not supported by objective findings. The complaints were primarily subjective.

References

1. The prognosis of acute low back pain in primary care in the United States: a 2-year prospective cohort study. Mehling WE, Gopisetty V, Bartmess E, Acree M, Pressman A, Goldberg H, Hecht FM, Carey T, Avins AL Spine (Phila Pa 1976). 2012 Apr;37(8):678-84.
2. Practice guidelines for chronic pain management. An updated report by the American Society of Anesthesiologists Task Force on Chronic Pain Management and the American Society of Regional Anesthesia and Pain Medicine. American Society of Anesthesiologists Task Force on Chronic Pain Management, American Society of Regional Anesthesia and Pain Medicine. Anesthesiology 2010 April;112(4):810-33.
3. College of Physicians and Surgeons of Ontario. Evidence-based recommendations for medical management of chronic non-malignant pain; American College of Occupational and Environmental Medicine's Occupation Medicine Practice Guidelines. (2008). [Entire Resource]
4. Shen FH, Samartzis D and Andersson GB, Nonsurgical management of acute and chronic low back pain. J Am Acad Orthop Surg, 2006. 14(8):477-487.
5. Veterans Health Administration, Department of Defense. Clinical practice guideline for the management of low back pain or sciatica in the primary care setting. Washington (DC): Department of Veterans Affairs (U.S.); 1999 May. Various p. [216 references]
6. Anderson RE, Drayer BP, Braffman B, Davis PC, Deck MD, Hasso AN, Johnson BA, Masaryk T, Pomeranz SJ, Seidenwurm D, Tanenbaum L, Masdeu JC. Acute low back pain--radiculopathy. American College of Radiology. ACR Appropriateness Criteria. Radiology 2000 Jun;215(Suppl):479-85.
7. Institute for Clinical Systems Improvement (ICSI). Adult low back pain. Bloomington (MN): Institute for Clinical Systems Improvement (ICSI); 2002 Sep. 61 p.
8. Helfgott, Simon, MD. Diagnosing and Managing Low Back Pain. Cortland Forum; November, 2005; PP 24-34
9. Trigger point injections for myofascial pain. Retrieved December 6, 2011 from www.Hayesinc.com/subscribers. (60 articles and/or guidelines reviewed)
10. A double-blind, controlled evaluation of the value of sarapin in neural blockade. Manchikanti KN, Pampati V, Damron KS, McManus CD.; Pain Physician. 2004 Jan;7(1):59-62.

Received Date: 04/26/2016

*2018-03297-CT*

Fax Server W RDT 2    8/19/2016 10:45:23 AM   PAGE    6/007   Fax Server

Progressive RDT1    4/26/2016 9:04:56 AM   PAGE    6/007   Fax Server

RE:        Sarrah Deets
EW file #   5451717
Claim #     155438687
DOA:       8/14/2015
DOB:       1/17/1985
Provider:   Sheldon Lebovitz, D.O., Daniel Scott, PA-C, Nirav Patel, D.C., Sarah Cole, D.C.,
           Amanda Wright, LMT

Very truly yours,

Michael Ziev D.O. FAOBFP, FABQAURP

Received Date: 04/26/2016

*2018-03297-CT*

# EXHIBIT C

*2018-03297-CT*

Progressive RDT1      8/19/2016 10:43:14. AM   PAGE    2/003    Fax Server

PROGRESSIVE CLAIMS
PO BOX 512926
LOS ANGELES, CA 90051

**PROGRESSIVE®**

Underwritten By:
Progressive Advanced Insurance
Company
  Claim Number:   15-5438687
  Loss Date:        August 14, 2015
  Document Date: April 26, 2016
  Page 1 of 2

ALIGNED MEDICAL GROUP
4 Industrial Blvd
Suite 200
Paoli, PA 19301-1608

claims.progressive.com
  Track the status and details of your claim,
  e-mail your representative or report a
  new claim.

## Claim Information

RE: Sarrah Deets

*Medical Claim Information*

Dear Provider

As you are aware, a Peer Review has been performed regarding treatment rendered to the above mentioned patient. Enclosed, please find a copy of the peer review report.

Based upon the Peer Review Organization (PRO) findings, and in accordance with Pennsylvania ACT VI, section 1797b(7) we cannot afford any payment to you for unpaid and/or future billings as indicated below, as a result of this accident. According to the findings in the peer review:

-*All treatment, including chiropractic care, massage, office visits, medication, and injections was deemed not reasonable or necessary as of 11/26/2015. MMI was found to be 11/25/2015. We have paid/will pay all medical bills through 11/25/2015.*

Additionally, we are requesting reimbursement in the amount of $2923.49 for treatment that has already been paid, but was found to be *medically unreasonable or unnecessary* by the PRO. If reimbursement is received within 30 days, we will forego the 12% annual interest fee mandated by the Pennsylvania MVFRL section 1797b(7).

Pursuant to Pennsylvania Financial Responsibility Law, Section 1797b(2), "An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same specialty as the individual subject to review."

If you have any questions, please contact me.

*2018-03297-CT*

Received Date: 04/02/2018

<u>VERIFICATION</u>

I, Kelley Perkins, do hereby state that I am the authorized representative of Aligned Medical Group, P.C., and do hereby verify that the averments and statements in the attached document are true and correct to the best of my knowledge, information and belief and that this statement is made subject to the penalties of 18 Pa.C.S, Section 4904, relating to unsworn falsification to authorities.

Dated: 3/26/18

Kelley Perkins

*2018-03297-CT*

# EXHIBIT "B"

Prothonotary  > Case #2018-03297-CT > ALIGNED MEDICAL GROUP, P.C. VS. PROGRESSIVE INSURANCE COMPANY

Search Again          Case Details          Print

4/23/2018 1:44 PM

Case Details

Case#:  **2018-03297-CT**                                    Initial Date:  **3/27/2018**
Case Type: **OTHER CONTRACT**                          Status:  **PENDING**

                                                        Status Date:  **3/27/2018**

Judge: **WHEATCRAFT, ANN MARIE**

| Date | Docket Notes |
|------|------|
| 3/27/2018 | **COMMENCEMENT OF ACTION FEE** |
| | **:: :: On behalf of Plaintiff: ALIGNED MEDICAL GROUP, P.C. :: Filed By: MATTHEW JORDAN BILKER Receipt: 784553 Date: 03/27/2018** |
| 3/27/2018 | **COMPLAINT FILED** |
| | **:: :: On behalf of Plaintiff: ALIGNED MEDICAL GROUP, P.C. :: Filed By: MATTHEW JORDAN BILKER** |
| 3/27/2018 | **COVER SHEET(S) FILED** |
| | **:: :: On behalf of Plaintiff: ALIGNED MEDICAL GROUP, P.C. :: Filed By: MATTHEW JORDAN BILKER** |
| 3/27/2018 | **NOTICE TO PLEAD :: :: On behalf of Plaintiff: ALIGNED MEDICAL GROUP, P.C. :: Filed By: MATTHEW JORDAN BILKER** |
| 3/27/2018 | **EFILING FEE Receipt: 784553 Date: 03/27/2018** |
| 3/27/2018 | **0002 - ATTORNEY STATUS** |
| | **Attorney BILKER, MATTHEW JORDAN representing Plaintiff ALIGNED MEDICAL GROUP, P.C. as of 03/27/2018** |
| 4/16/2018 | **AFFIDAVIT OF SERVICE OF WRIT OF SUMMONS VIA MAIL ON 4-5-18 UPON SEE AFFIDAVIT OF SERVICE :: :: On behalf of Plaintiff: ALIGNED MEDICAL GROUP, P.C. :: Filed By: MATTHEW JORDAN BILKER** |
| 4/17/2018 | **NOTIFICATION OF ELECTRONIC FILING** |

## **CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on April 26, 2018 the within **NOTICE OF**

**REMOVAL** was served via Federal Express, postage prepaid, upon the following:

Matthew J. Bilker, Esq.
Eckell, Sparks, Levy, Auerbach, Monte, Sloane, Matthews & Auslander, P.C.
300 W. State Street, Suite 300
P.O. Box 319
Media, PA 19063

Daniel J. Twilla